UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN OTIS BURNSIDE,
:
Petitioner : No. 4:CV-10-2090
:
vs. : (Petition Filed 10/08/10)
:
: (Judge Muir)
WARDEN R. MARTINEZ, :
:
Respondent :

**MEMORANDUM AND ORDER**

December 17, 2010

John Otis Burnside, ("Burnside"), an inmate confined in the Allenwood United States Penitentiary, White Deer, Pennsylvania, ("LSCI-Allenwood"), filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that his due process rights were violated during the course of a prison disciplinary hearing, where he was found guilty of the prohibited act of Stealing, a violation of Disciplinary Code Section 219. (Doc. 1, petition). Specifically, he claims that "from 7-27-10 through 8-23-10", Bureau of Prisons ("BOP") program statements he needed to research and review were not available to him "because they were not available in the U.S.P-Allenwood Education Electronic Law Library and they were not available in paperback". Id.

Thus, petitioner files the instant action in which he seeks to have the incident report expunged. Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**Background**

On July 27, 2010, at approximately 5:15 p.m., Burnside was issued Incident Report 2046081 charging him with Stealing and Refusing to Obey an Order of any Staff Member, violations of code 219 and code 307. (Doc. 7, Ex. A, Att. 1, Incident Report). A copy of the incident report was delivered to Burnside on July 27, 2010, at approximately 8:00 p.m. Id. The incident report, which was written by Correctional Officer Brian A. Paviglianti, reads as follows:

> On Tuesday July 27, 2010 at approximately 5:15 pm while conducting random inmate pat searches in the corridor outside the exit to Food Service, Inmate John Burnside Reg number 17973-004, refused to comply with an order to be pat searched. While escorting him to the Officers Mess for a visual search he complied to be pat searched. While conducting the pat search Inmate Burnside again refused multiple orders to place and keep his hands on the wall. During the pat search I found his lower right pant leg filled with sandwiches at which time he was escorted to the Officers Mess where I conducted a visual search. At this time I

2

> discovered his left pant leg to be filled with sandwiches. The remainder of the search was completed with negative results. Inmate Burnside was found to have twenty five sandwiches that consisted of two pieces of bread and one piece of chicken patty.

Id. On July 28, 2010, petitioner appeared before the Unit Discipline Committee ("UDC"). (Doc. 7, Ex. A, Att. 1, Committee Action). The UDC referred the charge to the Discipline Hearing Officer ("DHO"), with a recommendation that, if the DHO found Burnside to be guilty, then sanctions including loss of good conduct time and 30 days disciplinary confinement be imposed. Id. During the UDC hearing, Burnside was informed of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 7, Ex. A, Att. 2, Inmate Rights at Discipline Hearing form).

On July 28, 2010, Burnside was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Doc. 7, Ex. A, Att. 3, Notice of Discipline Hearing Before the DHO). Burnside waived his rights to have a staff member represent him at the hearing and to have witnesses testify on his behalf. Id.

On August 3, 2010, petitioner appeared for a hearing

before DHO, Todd W. Cerney. (Doc. 7, Ex. A, Att. 4, DHO Report). During the August 3, 2010 DHO hearing, the DHO again read and reviewed the inmate's due process rights with Burnside, and Burnside indicated that he understood them. Id. The DHO confirmed that Burnside received a copy of the incident report, that he did not want to call any witnesses, and that he did not want a staff representative. Id. During the hearing, petitioner stated "'I say I'm not guilty because I did not steal anything and I did not refuse any search. I'm Medium Custody and I shouldn't be on this compound." Id. Aside from this statement, Burnside provided no documentary evidence. Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: (1) July 27, 2010 memoranda from C. Schrawder, Cook Supervisor; and (2) a July 25, 2010 photograph taken by Officer Reinard. Id.

The specific evidence taken from the relied upon documentary evidence was as follows:

> During this discipline hearing regarding BURNSIDE, John O., Register No. 17973-004, for the charges of Stealing and Refusing to Obey and Order of Any Staff Member, Codes 219 and 307, the following information was evidentiary and documented by the DHO in his findings.

4

BURNSIDE's involvement in the incident, as noted in Section 11 of Incident Report 17973-004, as provided by Brian A. Paviglianti, Correctional Officer, was reviewed. Paraphrased, Brian A. Paviglianti writes: On Tuesday July 27, 2010 at approximately 5:15 pm while conducting random inmate pat searches in the corridor outside the exit to Food Service, Inmate John BURNSIDE Reg number 17973-004, refused to comply with an order to be pat searched. While escorting him to the Officers Mess for a visual search he complied to be pat searched. While conducting the pat search, BURNSIDE again refused multiple orders to place and keep his hands on the wall. During the pat search I found his lower right paint leg filled with sandwiches at which time he was escorted to the Officers Mess where I conducted a visual search. At this time I discovered his left pant leg to be filled with sandwiches. The remainder of the search was completed with negative results. Inmate BURNSIDE was found to have twenty five sandwiches that consisted of two pieces of bread and one piece of chicken patty.

Inculpatory evidence in the form of a photograph of 25 individually packaged sandwiches as removed from BURNSIDE'S person.

Upon questioning by the DHO, BURNSIDE denied the charge. He elaborated upon his plea by stating, "I'm not guilty because I did not steal anything and I did not refuse any search. I'm Medium custody and I shouldn't be on this compound." Despite BURNSIDE'S claimed innocence, the DHO believed he had the ability to avoid possible punishment by not telling the truth. Conversely, Officer

5

> Paviglianti, was known to have gained nothing by falsifying his interaction with BURNSIDE and the discovery of the secondary packaged sandwiches on his person. Further, the fact BURNSIDE was outside of Food Service with this food hidden on his body, led the DHO to believe it was stolen from the Food Service department where he held employment. Ultimately, BURNSIDE was searched and the sandwiches were discovered. With this, the DHO expunged the Refusing an Order charge.
>
> After the consideration of evidence listed in Sections III and V of this report and documented above, the DHO has drawn the conclusion the greater weight of the evidence listed in paragraphs two through four above, supports the finding BURNSIDE, John O., Register No. 17973-004, committed the prohibited act of Stealing, Code 219, on 7/27/10, at or about 5:15 PM, Corridor outside of Food Service, at USP-Allenwood, PA.

Id. The DHO sanctioned Petitioner to disallowance of fourteen (14) days good conduct time, 12 months loss of Food Service job assignment, concluding, 8/2/11, and a three (3) month loss of commissary privileges, concluding 11/2/10. Id. The DHO documented his reasons for the sanctions given as follows:

> BURNSIDE's theft of food service items threatens the orderly running of the department. Theft of government property not only costs the institution money, but American tax payers. With this, disallowed good conduct time and loss of Food Service

> job assignment are sanctioned to punish
> BURNSIDE for his actions, while loss of
> commissary privileges will deter his from
> this conduct in the future.

Id. Burnside was advised of his appeal rights at the conclusion of the hearing. Id.

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in

7

the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. <u>Wolff</u>, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Superintendent v. Hill</u>, 472 U.S. 445-46 (1985); <u>see</u> <u>also</u> <u>Griffin v. Spratt</u>, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. <u>Hill</u>, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, <u>et seq</u>., and entitled, <u>Inmate Discipline and Special Housing Units</u>. These procedures are

intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. See 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. See 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate

9

a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the instant case it is clear that Burnside was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Petitioner chose only to make a statement, which was documented in the DHO's report. Petitioner also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Petitioner was then notified of his right to appeal.

To the extent Burnside claims that he was not able to access unspecified BOP Program Statements in order to "prepare his defense" during the discipline hearing, there is absolutely no evidence that Burnside even attempted to access any program statements prior to or during his discipline hearing. In fact, there is no evidence in the record that this issue was ever raised by Burnside to any staff member prior to his August 3, 2010, discipline hearing. The informal

10

resolutions he submits in support of this claim (see Doc. 1, att. C and D) were not submitted to staff until August 11, 2010, after the disciplinary action was completed. These requests to staff do not allege that he was not able to access program statements for his discipline hearing, but rather, he was not able to access program statements "that I need for pending litigation" or "to perfect my appeal." Id. While the BOP Program Statements referenced by Burnside may set forth the structure and guidance for prison disciplinary procedures, an inmate's due process rights at a DHO hearing are guided by Wolff. As set forth above, Burnside received all due process rights in the preparation for and conducting of his DHO hearing.

Since Burnside was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, in addition to the Incident Report and Investigation, the DHO considered the following documentary

11

evidence: (1) July 27, 2010 memoranda from C. Schrawder, Cook Supervisor; and (2) a July 25, 2010 photograph taken by Officer Reinard. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Moreover, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.13, the following are some of the sanctions available for 200 level offenses:

> B.1. Disallow ordinarily fourteen to twenty-seven days good conduct time; and,
>
> G. Loss of privileges.

28 C.F.R. § 541.13 (Tables 3 and 4). Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied. An appropriate Order accompanies this Memorandum Opinion.

                                                  s/Malcolm Muir
                                                  MUIR
                                                  United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

```
JOHN OTIS BURNSIDE,           :
           Petitioner         :    No. 4:CV-10-2090
                              :
     vs.                      :    (Petition Filed 10/08/10)
                              :
                              :    (Judge Muir)
WARDEN R. MARTINEZ,           :
                              :
           Respondent         :
```

**ORDER**

December 17, 2010

For the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk of Courts is directed to **CLOSE** this case.

> s/Malcolm Muir
> MUIR
> United States District Judge